## Case No. 23-3220

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SEMA'J GRIFFIN,

Plaintiff-Appellant

v.

LLOYD AUSTIN, SECRETARY OF DEFENSE

Defendant-Appellee

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## Oral Argument Requested

Plaintiff-Appellant's Counsel:

Gary A. Reeve (0064872)
5354 Cemetery Road
Hilliard, Ohio 43026
Ph.: (614) 808-1881
Fax: (614) 334-5107
*greeve@reevelaw.net*

# **TABLE OF CONTENTS**

Table of Authorities                                                              ii

I. Appellee slants disputed facts and draws unnecessary conclusions from         1
those slanted facts in a manner that belies the fact that a reasonable jury
might not see the facts and conclusions in the same way, and that
Plaintiff-Appellant Sema'j Griffin ("Griffin") might prevail at trial.

    A. Appellee ignores the fact that a reasonable jury could decide that     1
Branch Manager Sally Souvannavong ("Souvannavong") both
directly discriminated against Griffin and caused others to
discriminate against Griffin through her actions.

    B. The "cat's paw" theory is appropriate in the instant case             3
regarding Souvannavong in relation to those below and above
her in the chain of command.

    C. Appellee misleadingly uses the wrong framework to try and          5
defeat Griffin's prima facie case.

    D. Appellee attempts to use its potentially slanted conclusions
regarding Griffin's performance to cast doubt upon whether he
was qualified to perform his position.                                          5

    E. A reasonable jury could determine the reasons for discharge to
be pretextual.                                                                  7

II.  Conclusion                                                                    9

III.  Certificate of Service                                                       9

IV.  Certificate of Compliance                                                    10

Designation of Relevant District Court Documents

# <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Bent-Crumbley v. Brennan*, 799 F.App'x 342, 345 (6th Cir. 2020)    5

*Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250 (6th Cir. 1985)    2-3

*McNabola v. Chicago Transit Authority*, 10 F.3d 501 (7th Cir.1993)    7

*Manzer v, Diamond Shamrock Chem., Co.*, 29 F.3d 1078 (6th Cir. 1994)    7

*Mitchell v. U.S. Postal Service*, 738 F.App'x 838 (6th Cir. 2018)    7

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)    1

*Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)    3

**I. Appellee slants disputed facts and draws unnecessary conclusions from those slanted facts in a manner that belies the fact that a reasonable jury might not see the facts and conclusions in the same way, and that Plaintiff-Appellant Sema'j Griffin ("Griffin") might prevail at trial.**

The U.S. Supreme Court clearly states that is improper for any Court to weigh the facts or make credibility determinations in favor of the moving party in a summary judgment context when a jury has reason(s) to disbelieve those characterizations of the facts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). In its Brief, Appellee repeatedly sets forth conclusory statements made by it or its witnesses as if they are undisputed facts. Their version of these facts are slanted, and in some cases just plain wrong. These facts are in dispute, and for good reasons that could be believed by a reasonable jury and could cause Griffin to prevail on his claim.

**A. Appellee ignores the fact that a reasonable jury could decide that Branch Manager Sally Souvannavong ("Souvannavong") both directly discriminated against Griffin and caused others to discriminate against Griffin through her actions.**

The Trial Court chose to believe Souvannavong's version of both her intentions and her actions, even when her version was contradicted by other employees of DLA. Souvannavong's whitewashed version of events need not be believed by a jury. *Reeves*, at 151. While Souvonnavong was known to be viral and manipulative in general, she took a very special interest in dealing harshly with Griffin in ways that demonstrated he was singled out in that regard.

The evidence shows that from the moment she found out from Griffin's supervisor Michael Swiggum ("Swiggum") that Griffin had ADHD, Souvannavong *immediately* stated, "I do not want *that* in my department." (R.29 Swiggum TR 12-13, PageID # 1194-95)  "[H]arassment directed at an employee by a single supervisor can sufficiently poison the employee's working atmosphere, since a supervisor can dominate the workplace with respect to his subordinate." *Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250, 1260 (6th Cir. 1985). Souvannavong both herself and through others, harassed, intimidated and subjected Griffin to undue scrutiny. (R.29 Swiggum TR 15-16, PageID # 1197-98; Griffin TR 75, 78, 85-86, 147, 153, PageID # 192, 195, 202-03, 264, 270; R.27 Koukourakis TR 23-24, PageID # 1085-86)  Souvannaving put undue pressure on Griffin's immediate supervisors, Swiggum and Derek Dobbins ("Dobbins") to write him up and ask for his removal to the point where they found it to be a personal vendetta. (R.29 Swiggum TR 13-14, 18-20, 36-37, 54, 56-57, PageID # 1195-96, 1200-02, ,1218-20, 1234, 1238-39; R.26-3 Dobbins Aff. Q.28, Ex. 1-3, p. 551, PageID # 917; R.28 Souvannavong TR 33-34, PageID # 1166-67).

Appellee acknowledged that the amount of harassment dished out to Griffin by Souvannavong would naturally make it harder for any normal employee to complete their work. (R.29 Swiggum TR 62-64, PageID # 1246-48; R.26-3 Dobbins Aff. Q.29, Ex 1-3, p. 551, PageID # 917; R.27 Koukourakis TR 41,

PageID # 1102)  Souvannavong was the supervisor that "poisoned the atmosphere in the workplace" for Griffin and dominated the workplace against his interests. see *Erebia*, at 1260.  All of this constitutes *direct* evidence of unlawful discrimination by the person to whom Griffin's immediate supervisor directly reported, and who forced Griffin to sit right outside her office.

Finally, Souvannavong ordered Swiggum to write a statement that would convince Department Chief Ryan DiPaolo to ask for Griffin's removal from her Branch. (R.28 Souvannavong TR 25-27, PageID # 1158-60; R.29 Swiggum TR 24, PageID # 1206)  This caused DiPaolo to harshly criticize Griffin to the point that when Koukourakis read DiPaolo's email he concluded that Griffin's "performance didn't matter" in their desire to have Griffin removed, as the statements were so far in opposition to Griffin's most recent Quarterly Report given a mere five (5) weeks before. (R.27 Koukourakis TR 40, PageID # 1102)

> **B. The "cat's paw" theory is appropriate in the instant case regarding Souvannavong in relation to those below and above her in the chain of command.**

While Souvannavong was not the final decision maker in this scenario, she pulled the strings and manipulated the players to eventually accomplish the deed. This case exemplifies the cat's paw theory of discrimination. *Staub v. Proctor Hosp.*, 562 U.S. 411, *supra.* (2011).  Souvannavong damaged Griffin's ability to work and put constant pressure on immediate supervisors Swiggum and Dobbins to

write Griffin up to support removal, and when they sought help from others in management to stop this activity that help was not forthcoming. (see R.29 Swiggum TR 16-17, 62-64, PageID # 1198-99, 1246-48)  Souvannavong directly influenced DiPaolo to write an email she knew Koukourakis would be forced to act upon, even though the content of the email was in direct contrast to the extremely recent Quarterly Report issued on Griffin. (R.28 Souvannavong TR 25-27, PageID # 1158-60; R.29 Swiggum TR 24, PageID # 1206; R.27 Koukourakis TR 40, PageID # 1102)  Having set all of this in motion, Souvannavong would reasonably have felt safe in the likelihood that Griffin would be removed from her Branch and possibly from employment with DLA.  Lt. Cmdr. DiPaolo, then final decision maker Col. Payne, were Souvannavong's "cat's paws."  That Griffin was discharged rather than being reassigned may not have been an inevitability, but the danger Souvannavong placed him in caused it to be a definite and likely possibility.  It is reasonable to believe that had Griffin not been identified to Souvannavong as suffering from ADHD, she would not have targeted him for reassignment/removal, i.e., the process to remove him would never have started. Had Souvannavong not targeted Griffin in the manner described above, he would not have been discharged.

**C. Appellee misleadingly uses the wrong framework to try and defeat Griffin's prima facie case.**

Appellee utilizes a legal framework used for Americans with Disabilities Act claims in an attempt to automatically defeat Griffin's claim. (see Appellee Brief p.44)  Appellee knows that there existed no comparators in the QMAC department because Griffin was the only remaining College Intern during his employment. (Appellee Brief p. 45-46)  However, this Court recognized the sometimes unique nature of governmental employees in determining the legal framework of a prima facie case for disability discrimination under the Rehabilitation Act to be: (1) proof that the person is a disabled person under the law; (2) that he was a qualified to perform the position with or without a reasonable accommodation; and, (3) proof of an adverse employment action based solely on his disabled status. *Bent-Crumbley v. Brennan*, 799 F.App'x 342, 345 (6th Cir. 2020).  This makes the lack of comparators irrelevant.

**D. Appellee attempts to use its potentially slanted conclusions regarding Griffin's performance to cast doubt upon whether he was qualified to perform his position.**

Appellee makes an argument regarding qualifications that Griffin's supervisor specifically refuted.  In the July 15, 2020, Quarterly Report, Swiggum rated Griffin as acceptable in all general areas on the report that required numeric or "YES-NO" ratings. (R.26-1 Ex. 1, p. 195-96, PageID # 561-62)  Swiggum's

comments were generally complementary as to Griffin's improvement in prior

problem areas and his ability to complete his work with accuracy. (R.26-1 Ex. 1, p.

196-97, PageID # 562-63)  All witnesses who were asked to assess Griffin's final

Quarterly Report felt that it was a generally positive review. (R.27 Koukourakis

TR 33-35, 39-40, Page Id # 1095-97, 1101-02, ; R. 29 Swiggum TR 27-29, PageID

# 1209-11; R.28 Souvannavong TR 22-23, PageID # 1145-46)  Swiggum

explained that view in his deposition as follows:

> 17  Q. Did you consider that to be acceptable to
> 18   you for a college intern, still room for improvement?
>
> 19  A. To be acceptable?
>
> 20  Q. Yes.
>
> 21  A. I mean, yeah. He's still in the training
> 22  position.

Swiggum acknowledged Griffin's success performing a greater variety of tasks, as

well. (R.29 Swiggum TR 22, PageID # 1204)  Simply put, Griffin could and did

adequately perform the job of a Student Intern.

As a "qualification," Griffin was never advised his grade college point

average was a problem at any time, including as a reason for discharge.  He knew

he was required to *graduate* with a cumulative 3.0 grade point average to become a

PACER. (R.26 Griffin TR 24-25, 65, PageID # 141-42, 182)  He was not aware of

a requirement to have that grade average at all times and there is no evidence that

was true. (Id.)  The "red herring" defense of lack of qualifications based on Griffin's GPA is therefore speculative, as there is no reason to believe Griffin could not have achieved a 3.0 GPA by graduation.

### E. A reasonable jury could determine the reasons for discharge to be pretextual.

Griffin can prove to a reasonable jury that he was discharged solely because of his disability by proving that the reasons set forth by Defendant were pretextual under the *Manzer* test.  He can prove pretext by proving "'(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.'" *Manzer v. Diamond Shamrock Chem., Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted).  Griffin "must only prove enough to create a genuine issue as to whether the rationale is pretextual." *Mitchell v. U.S. Postal Service*, 738 F.App'x 838, 847 (6th Cir. 2018).

As explained above, Griffin's ability to perform his job tasks was adequate for a Student Intern according to his direct supervisor.  As to the severity of time clocking issues, Griffin thought at one time he could work off the clock outside of normal work hours to catch up backlogged duties. (R.26 Griffin TR 156-57, 159, PageID # 273-74, 276)  At no time was Griffin ever accused of "stealing time."

(R.27 Koukourakis TR 22, PageID # 1084)  In fact, in the instance of working off the clock, he was accused of wrongly *giving away* his time. (see R.26 Griffin TR 156-57, 159, PageID # 273-74, 276)  All time clocking issues were *de minimus*, at worst, and therefore insufficient to warrant discharge.  In addition, Griffin was not accused of any wrongdoing for personal gain.

Griffin did not demonstrate an unprofessional attitude or conduct, as stated by Appellee in its brief with no factual citation to support this "evidence."  In fact, the following are examples of Swiggum praising Griffin's positivity and effort in the Quarterly Reports:

- "[Griffin] has done well this quarter completing the majority of assignments timely, and with less oversight." (R.31-1 Jnt. Dep. Ex. 6, 6/30/23 Quarterly Report PageID # 1348)

- "Overall Sema'j is still respectful and displays enthusiasm for DLA's support for the Warfighter, and is eager to progress in his career at DLA." (R.31-1 Jnt. Dep. Ex. 6, 6/30/23 Quarterly Report PageID # 1349);

- "Sema'J has done well reaching out and asking questions on performing certain actions from myself and teammates…" (R.31-1 Jnt. Dep. Ex. 6, 9/30/19 Quarterly Report PageID # 1373)

## II. Conclusion

Plaintiff-Appellant SeMa'j Griffin ("Griffin") asserts that the Trial Court engaged in an improper weighing of evidence and credibility to erroneously downplay evidence of discrimination and decide against this being a direct evidence case. As set forth in his initial Brief and this Reply Brief, Griffin's disability was the sole reason why he found himself subjected to removal by DLA. There was significant direct evidence of discrimination by his second level supervisor that caused the discharge to occur. A reasonable jury could find the alleged legitimate non-discriminatory reasons set forth by DLA to be pretextual, leaving nothing but Griffin's disability as the "but for" reason for discharge. The Trial Court's Opinion and Order granting Defendant-Appellee's Motion for Summary Judgment, and the Judgment itself, must be VACATED and the case returned to the Trial Court for a trial by jury.

## III. Certificate of Service

I hereby certify that the foregoing Appellant's Brief was filed via the Court's ECF system, and thereby served upon opposing counsel electronically on July 18, 2023.

**IV.     Certificate of Compliance**

I certify that the foregoing Reply Brief of Griffin complies with the type-volume limitations of F.R.Apx.P. 32(a)(7)(B).  The text of the brief (exclusive of the Table of Contents, Table of Authorities) contains 2,101 words in a proportional typeface.  **I declare that the foregoing Certificate is true to the best of my information, knowledge, and belief.**

Respectfully Submitted,

s/ Gary A. Reeve
Gary A. Reeve (0064872)
Attorney for Plaintiff-Appellant
5354 Cemetery Road
Hilliard, Ohio 43026
Ph.: (614) 808-1881
Fax: (614) 334-5107
*greeve@reevelaw.net*

# <u>DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS</u>

| | |
|---|---|
| R.26 Deposition of SeMa'j Griffin | PageID # 141-42, 182, 192, 195, 202-03, 264, 270, 273-74, 276 |
| R.26-1 Jnt. Dep. Ex. 1-1 | PageID # 561-63 |
| R.26-3 Jnt. Dep. Ex. 1-3 | PageID # 917 |
| R.27 Deposition of George Koukourakis | PageID # 1084-86, 1097, 1101-02 |
| R.28 Deposition of Sally Souvannavong | PageID # 1145-46, 1158-60, 1166-67 |
| R.29 Deposition of Michael Swiggum | PageID # 1194-98, 1198-1202, 1204, 1206, 1209-11, 1218-20, 1234, 1238-39, 1246-48 |
| R.31 Deposition of Colonel Payne | PageID # |
| R.31-1 Jnt. Dep. Ex. 6 | PageID # 1324-86 |
| Appeal Doc. 18 Appellee Brief | Page 44-46 |